UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN VIBAL,<br><br>　　　　　　　　　　　Plaintiff,<br>v.<br>GEICO CASUALTY COMPANY,<br><br>　　　　　　　　　　　Defendant. | Case No.: 17CV534-LAB(BLM)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL DISCOVERY**<br><br>**[ECF NO. 56]** |

Currently before the court is Plaintiff's December 29, 2017 "MOTION TO COMPEL DISCOVERY" [ECF No. 56 ("MTC")], Defendant's January 4, 2018 opposition to the motion [ECF No. 66 ("Oppo.")], and Plaintiff's January 16, 2018 reply [ECF No. 73 ("Reply")]. For the reasons set forth below, Plaintiff's motion is **GRANTED.**

## **BACKGROUND**

The instant matter was removed to this Court on March 16, 2017 from the San Diego Superior Court. ECF No. 1 (Notice of Removal and Plaintiff's Complaint). Plaintiff's complaint alleges breach of contract and insurance bad faith - breach of the covenant of good faith and fair dealing. Id. at 7-13. The complaint arises from an Automobile Insurance Policy that Defendant sold and issued to Plaintiff on or about March 4, 2016. Id. at 8. According to the policy, Defendant would "pay for collision loss to [Plaintiff's] auto for the amount of each loss less the applicable deductible." Id.

1

Plaintiff alleges that on May 27, 2016, he drove his car to Anaheim, California. Id. at 9. On May 28, 2016, Plaintiff parked his car near his father's home in Anaheim. Id. On May 29, 2016, a neighbor of Plaintiff's father reported to police that he heard a crash. Id. The neighbor went outside and saw a gray Honda collide with Plaintiff's car and flee. Id. A California Highway Patrol Officer came to the crash site, took a statement from the neighbor who had called, and had Plaintiff's vehicle towed. Id. The officer concluded that Plaintiff's vehicle had been "subject to a hit-and-run." Id.

On May 29, 2016, Plaintiff filed a claim with Defendant. Id. Defendant denied the claim in a letter dated July 21, 2016 stating that the damage occurred while the vehicle was in motion and not parked as alleged. Id. When Plaintiff's counsel requested a copy of the report from Defendant on September 13, 2016, Defendant refused to provide the report. Id. Plaintiff has since returned to Arizona as his car sits unrepaired in Anaheim. Id. at 10.

## **PARTIES' POSITIONS**

Plaintiff seeks an order from the Court compelling Defendant "to provide substantive discovery responses to Plaintiff's First and Second Sets of Requests for Production of Documents." MTC at 1. Specifically, Plaintiff seeks additional responses to Requests for Production ("RFP") 4, 5 and 10. The RFPs request:

**REQUEST FOR PRODUCTION NO. 4**

For each and every employee, agent, and/or servant of Defendant who had direct, supervisory, or managerial responsibility for handling, investigating, processing, or adjudicating Plaintiff's Claim produce all Documents that evaluate the individual's job performance for the period between January 1, 2015 and the present.

**REQUEST FOR PRODUCTION NO. 5**

For each and every employee, agent, and/or servant of Defendant who had direct, supervisory, or managerial responsibility for handling, investigating, processing, or adjudicating Plaintiff's Claim produce all Documents containing criteria for evaluating the individual's performance.

**REQUEST FOR PRODUCTION NO. 10**

> For the claims personnel involved in Plaintiff's Claim, produce all Documents generated during the period given in Procedures ¶ C[1] relating to report cards.[2]

ECF No. 56-1 ("Exh. A") at 7-8, and 15. Plaintiff argues that the information sought in the requests is discoverable and relevant. MTC at 5. Plaintiff also argues that courts "routinely order employee evaluations to be produced in insurance bad faith cases." Id. Plaintiff notes that the relevancy of his requests are not contingent upon a connection between job performance and performance based incentive compensation ("PBI"). Id. Plaintiff further argues that the documents sought in the RFPs are not proprietary and that Defendant cannot satisfy its burden to show that they are. Id. at 7. Plaintiff notes that (1) even confidential documents are discoverable, (2) the Protective Order that is currently in place [see ECF Nos. 17-18] "can sufficiently protect any truly proprietary information" and (3) the documents "do not seek information that is too sensitive to be adequately protected by a protective order." Id. at 7-8. Finally, Plaintiff argues that RFP No. 10 is not vague, ambiguous, or overbroad. Id. at 8.

Defendant first contends that Arizona law governs the instant matter as privacy claims are governed by the applicable state law when state law supplies the rule of decision. Oppo. at 5. Defendant notes that Arizona law establishes a high threshold for obtaining personnel records that Plaintiff has ignored and contends that Plaintiff's motion should be denied "as its supporting authority all turns on non-Arizona law." Id. at 6-7. Defendant also contends that there are less intrusive means of obtaining information regarding PBI such as a well drafted interrogatory or deposition question. Id. at 9 - 10. Finally, Defendant contends that *in camera* review of the employment records "would demonstrate to the Court a lack of incentivization programs for [Defendant] adjustor employees. Id. at 11. Defendant requests that Plaintiff's motion be

---

[1] Section C in Procedures states "TIME. Unless otherwise stated, these requests cover the period between January 1, 2016 and the present." MTC at Exh. A.

[2] Plaintiff states that report cards "track, measure, and rate claims handlers based in part on dollars paid out on claims ("severity")." MTC at 3.

denied. Id. at 11. Alternatively, Defendant requests that the Court require less intrusive discovery such as a tailored interrogatory or conduct an *in camera* review of the records at issue and apply Arizona's balancing test. Id.

Plaintiff replies that Defendant's choice of law analysis "is plainly and completely incorrect." Reply at 2. Plaintiff notes that the Federal Rules of Evidence do not govern in the instant matter and that the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") control. Id. Plaintiff also replies that the federal cases he has cited are relevant contrary to Defendant's contention that Ninth Circuit law not applying Arizona state law is "irrelevant and specious." Id. at 3. Plaintiff notes that even if Arizona law was controlling, it would not change the analysis as the Arizona Rules of Civil Procedure regarding discovery are identical to the Federal Rules. Id. at 3 and n.1. Plaintiff argues that it is unclear if California or Arizona state law will control this case, but that the issue is moot because both states have very similar substantive law regarding insurance bad-faith law. Id. at 3-4. In addition, because Defendant is not a public entity, "the standards applicable to public records requests in Arizona is utterly disconnected from the analysis." Id. at 4. Finally, Plaintiff replies that Defendant has failed to meet its burden to withhold discovery as the performance evaluations are relevant and discoverable and that Defendant does not get to dictate the order in which Plaintiff conducts his discovery, meaning that Plaintiff does not have to first ask an interrogatory or conduct a deposition before seeking the requested documents. Id. at 5-6.

## **LEGAL STANDARD**

1. <u>Discovery</u>

The scope of discovery under the Fed. R. Civ. P. is defined as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

District courts have broad discretion to determine relevancy for discovery purposes. See Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002). District courts also have broad discretion to limit discovery to prevent its abuse. See Fed. R. Civ. P. 26(b)(2) (instructing that courts must limit discovery where the party seeking the discovery "has had ample opportunity to obtain the information by discovery in the action" or where the proposed discovery is "unreasonably cumulative or duplicative," "obtain[able] from some other source that is more convenient, less burdensome, or less expensive," or where it "is outside the scope permitted by Rule 26(b)(1)").

A party may request the production of any document within the scope of Rule 26(b). Fed. R. Civ. P. 34(a). "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Id. at 34(b)(2)(B). The responding party is responsible for all items in "the responding party's possession, custody, or control." Id. at 34(a)(1). Actual possession, custody or control is not required. Rather, "[a] party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document." Soto v. City of Concord, 162 F.R.D. 603, 619 (N.D. Cal. 1995).

2. Choice of Law & Privacy

Regarding the choice of state and federal law in a federal action, the rule is as follows:

> if federal claims are asserted, federal law controls; if state claims are asserted (as in a diversity action), state law controls; in a case with mixed federal and state claims, federal law is controlling. . . . However, matters going to discovery procedural issues are entirely federal in nature. 'Though a federal court in a diversity action is to apply the substantive law of the forum in which it sits, discovery, as a procedural matter, is governed in a federal court only by the Federal Rules of Civil Procedure and state discovery practices are irrelevant. . . .' Determination of relevance, for example, is a federal matter.

James v. Kiewit Infrastructure W. Co., 2013 WL 3863906, at *2 (E.D. Cal. July 24, 2013) (citing First Pacific Networks, Inc. v. Atlantic Mutual Ins. Co., 163 F.R.D. 574, 577 (N.D. Cal. 1995)).

"Federal courts recognize a person's interest in preserving the confidentiality of sensitive

information contained in personnel files." Bernal v. United Parcel Serv., 2009 WL 10675955, at *2 (C.D. Cal. Oct. 27, 2009) (citing Detroit Edison Co. v. N.L.R.B., 440 U.S. 301, 319 n.16, 99 S. Ct. 1123, 59 L.Ed. 2d 333 (1979) (noting recognition in both federal and state legislation governing the recordkeeping activities of public employers and agencies)).[3] However, "[e]ven where strong public policy against disclosure exists, as in the case of personnel files, discovery is nonetheless allowed if the material sought is "clearly relevant," and the need for discovery is compelling because the information sought is not otherwise readily obtainable." Id. (citing Matter of Hawaii Corp., 88 F.R.D. 518, 524 (D.C. Hawaii 1980)); see also Beaver v. Delicate Palate Bistro, Inc., 2017 WL 4011208, at *2 (D. Or. Sept. 12, 2017) ("the courts of the Ninth Circuit generally allow discovery of employment records notwithstanding such privacy and public policy concerns where the material sought is clearly relevant to claims or defenses at issue and the information contained in the material is not otherwise readily available.").

## **DISCUSSION**

As an initial matter, the Court will be evaluating the instant dispute in accordance with the Federal Rules of Civil Procedure. The Court is not persuaded by Defendant's argument that the Arizona Public Records Law is applicable to the instant matter. Plaintiff seeks documents from Defendant, an insurance company that is not a public entity. The case that Defendant cites to in support of its argument, Bolm v. Custodian of Records of Tucson Police Dep't, 193 Ariz. 35, 37, 969 P.2d 200, 202 (Ct. App. 1998), "raises issues concerning the interplay between Arizona's Public Records Law, A.R.S. §§ 39–121 to 39–125, and Arizona common law relating to discovery of police records in the course of litigation" and reiterates "the firmly established rule that a public agency may deny or restrict access where recognition of the interests of privacy,

---

[3] See also Regan–Touhy v. Walgreen Co., 526 F.3d 641, 648–49 (10th Cir. 2008) ("[P]ersonnel files often contain sensitive personal information... and it is not unreasonable to be cautious about ordering their entire contents disclosed willy-nilly."); Whittingham v. Amherst College, 164 F.R.D. 124, 127–28 (D. Mass. 1995) ("[P]ersonnel files contain perhaps the most private information about an employee within the possession of an employer."); Miles v. Boeing Co., 154 F.R.D. 112, 115 (E.D. Pa. 1994) (personnel files are confidential and discovery of them should be limited).

confidentiality, or the best interest of the [public agency] in carrying out its legitimate activities outweigh the general policy of open access." Id. at 42 (internal quotations omitted). Those issues are not relevant to this case which does not involve a public agency.

Defendant also contends that in accordance with Federal Rule of Evidence ("Fed. R. Evid.") 501, Arizona state law should supply the rule of decision here because privacy claims are given special status under Arizona state law. Fed. R. Evid. 501 states "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. Here, Defendant is claiming the documents at issue are private and confidential, not that they are protected by an evidentiary privilege such as attorney/client privilege. Accordingly, Fed. R. Evid. 501 does not apply. See Century Sur. Co. v. Saidian, 2015 WL 12765555, at *2 (C.D. Cal. July 28, 2015) (finding that the work product doctrine in diversity cases is determined under federal law because the doctrine is not an evidentiary privilege) (citing Frontier Refining, Inc. v. Gorman–Rupp, Inc., 136 F.3d 695, 702 n.10 (10th Cir. 1998) and U.S. Inspection Services, Inc. v. NL Engineered Solutions, LLC, 268 F.R.D. 614, 617 n.2 (N.D. Cal. 2010) (because the work product doctrine is not an evidentiary privilege "but rather, [a] procedural limitation[ ] on discovery, the scope of [the] asserted protection[ ] is determined by federal law, even when the federal court sits in diversity.")).

### A.  Requests for Production of Documents

The Court finds that the documents requested in RFP Nos. 4, 5 and 10 are relevant and proportional to numerous issues in this bad faith litigation including the competence of the individuals involved in the handling of Plaintiff's claim, the adequacy and enforcement of the employee's training and any applicable corporate policies, and the existence or extent of any policies or practices relating to incentives to handle claims in a specific manner. See Am. Auto. Ins. Co. v. Hawaii Nut & Bolt, Inc. Moore, 2017 WL 80248, at *4–5 (D. Haw. Jan. 9, 2017) (granting request for personnel files and information for individuals who handled the insurance claim, permitting protected privacy information to be redacted, and noting that personnel files are routinely found to be relevant and discoverable "because [p]ersonnel files may reveal an inappropriate reason or reasons for defendant's action with respect to plaintiff's claim or an

7

'improper corporate culture.") (internal citations omitted).[4]  The Court also finds the criteria used by Defendant to determine adjustor performance and documents that "track, measure, and rate claims handlers based in part on dollars paid out in claims" are relevant to Plaintiff's claims.  To the extent the requested documents contain confidential information, the Court finds the protective order issued in this case will adequately protect the information.  See Id. at *4-5 (finding that the parties' protective order provided sufficient protection of the information contained in the personnel files.).  Defendant does not object that the requests are unduly burdensome or irrelevant[5] and the Court finds that the requests are neither vague nor ambiguous.  Accordingly, Plaintiff's motion is **GRANTED** and Defendant is **ORDERED** to provide supplemental responses to RFPs 4, 5, and 10 to Plaintiff on or before **February 9, 2018**.

---

[4] See also White Mountain Communities Hosp. Inc. v. Hartford Cas. Ins. Co., 2014 WL 6885828, at *3-4 (D. Ariz. Dec. 8, 2014) (granting motion to compel personnel records of adjustors who worked on plaintiff's claim because the records "may disclose information showing that the adjustors had reasons to 'low-ball' their evaluations, were not actually competent to adjust the type of claim made by White Mountain, or did not process the claim in a reasonable manner" which would be highly relevant to plaintiff's claims and noting that redacting certain information and producing the documents pursuant to a protective order would alleviate any privacy concerns and that there is no expectation that incentives or assessments of work performance to minimize payments on claims would be kept private.); and Ingram v. Great Am. Ins. Co., 112 F. Supp. 3d 934, 940 (D. Ariz. 2015) (ordering defendant to produce adjustor personnel files, including participation in an incentive plan because "the potential probative value of the information contained in those records outweigh any privacy concerns" and "[e]vidence regarding whether Defendants 'set arbitrary goals for the reduction of claims paid' and whether '[t]he salaries and bonuses paid to claims representatives were influenced by how much the representatives paid out on claims' is relevant to whether Defendants acted unreasonably and knew it.").  The Court disagrees with Defendant's interpretation of Ingram as requiring an advanced proven linkage between employee performance evaluations and incentivization and proof that the material could not be obtained by other less intrusive means. Oppo. at 8-9.  While the Ingram court does note that the information was unavailable through less intrusive means in support of its order, it does not state that the lack of less intrusive means for obtaining the information was a prerequisite to granting plaintiffs' motion or that plaintiffs were required to establish a link between incentivization programs and employee evaluations prior to granting their request to compel employee files.  Ingram, 112 F. Supp. 3d at 940.

[5] Neither party attached Defendant's objections to the requests as exhibits, but Defendant does not mention these objection in its opposition.  Oppo.

1 Defendant may redact any employee addresses, phone numbers, personal email addresses, and
2 social security numbers that may be contained in the records.

### B. Less Intrusive Means

Defendant argues that the instant motion could have been avoided if Plaintiff had simply requested the desired information through less intrusive means such as an interrogatory. Oppo. at 9-11. Plaintiff replies that the documents have relevance beyond what could be sought in a single interrogatory[6] and that he is not required to conduct discovery in a particular order. Reply at 6; see also MTC at 5-6. The Court agrees and declines to order Plaintiff to serve an interrogatory or ask deposition questions on the issues related to the contested RFPs prior to receiving a response to the RFPs. As Plaintiff has argued, there are reasons other than a link between performance reviews and the manner in which an adjustor handles a claim that make Plaintiff's requests relevant and that would not be sufficiently handled by an interrogatory on performance reviews and the closing of a claim by an adjuster. MTC at 5-6; see also supra note 6. In addition, this Court agrees with other courts that have found that deposition testimony is not a substitute for the information contained in a personnel file. See Am. Auto. Ins. Co., 2017 WL 80248, at *5 (noting that "although Safeway may have deposed some of these individuals, depositions are not a substitute for the contemporaneous information that may be included in personnel files.") (citing Liberty Mut. Ins. Co. v. Cal. Auto. Assigned Risk Plan, 2012 WL 892188, at *7 (N.D. Cal. Mar. 14, 2012) ("[E]x post facto deposition testimony of Mr. Hartman or other Liberty Mutual employees regarding his job performance will not prove as relevant or reliable as objective evaluations conducted outside this lawsuit. Further, the 'personnel documents in Mr. Hartman's file prior to the Harlan/Ten Berge matter are the best illustration of what Liberty Mutual knew or believed—at the time of the [Underlying Action]—about Mr. Hartman's

---

[6] Specifically, Plaintiff argues that the requested information is relevant to "the adequacy or inadequacy of [Defendant]'s claims-handling training, company policies or practices relating to claims handling, and policies or practices that [Defendant] enforces or chooses not to enforce" and to Defendant's "training, policies, and the level of enforcement (or non-enforcement) of those polices." MTC at 5-6.

competence,' and therefore provide the best evidence of the reasonableness of the company's choice to rely on his advice.")). Accordingly, the Court **DENIES** Defendant's request that Plaintiff's motion to compel be denied and Plaintiff be required to obtain such evidence via interrogatory or deposition.

### C. <u>In Camera Review</u>

The Court finds no basis in federal law for Defendant's request for the Court to conduct an *in camera* review of the documents at issue. There also is no factual basis or evidentiary need in this case to support such a request. As previously stated, the Court's protective order provides adequate protection for the requested documents. Accordingly, Defendant's request for such a review is **DENIED**.

**IT IS SO ORDERED**.

Dated: 1/26/2018

Hon. Barbara L. Major
United States Magistrate Judge